**STATON v. REYNOLDS METALS CO.**

**No. 660.**

District Court, W. D. Kentucky,
Louisville Division.

Feb. 7, 1945.

Morris, Garlove & Goldsmith and S.
Arnold Lynch, all of Louisville, Ky., for
plaintiff.

Robert F. Vaughan, of Louisville, Ky.,
for defendant.

MILLER, District Judge.

The plaintiff, Ben E. Staton, brought
this action to recover damages in the
amount of $9,000 for injuries sustained
while painting the ceiling of a building
being constructed by the defendant, Reyn-
olds Metals Company, at its plant No. 12,
Louisville, Kentucky.

A pre-trial conference disclosed that
there was no material difference between
the plaintiff and defendant as to the facts,
except as to the nature and extent of the
injuries. It was contended by the de-
fendant that these admitted facts failed
to establish as a matter of law any lia-
bility on the part of the defendant. On the
basis of such facts the Court makes the
ruling hereinafter stated.

On July 28, 1943, the defendant entered
into a contract with the Defense Plant
Corporation which was styled "Agreement
of Lease." Defendant was engaged at the
time in the manufacture of aluminum and
aluminum products. Prior to that date
it had leased property at 18th and Burnett
Streets, Louisville, Kentucky, on which
property it was planned to build a plant
for the manufacture of aircraft parts to
be delivered to other manufacturers of
aircraft holding contracts with the United
States Government. Under the contract
of July 28, 1943, the defendant agreed to
prepare the necessary plans and specifica-
tions for the construction of the installa-
tions and leasehold improvements and the
acquisition and installation of machinery
and to complete the construction thereof
as soon as practicable. In carrying out
this work the defendant was authorized
to employ such contractors and engineers
and to enter into such contracts with them
as it deemed advisable with the written
approval of the Defense Plant Corpora-
tion. The Defense Plant Corporation
agreed to advance the funds necessary
for carrying out the construction program
from time to time as the work progressed
upon requisition of the defendant, and
to reimburse the defendant for expenses
incurred in connection with such program.
Title to the installations, leasehold im-
provements and machinery was to be vested
in the Defense Plant Corporation. No
salaries of the defendant's executive offi-
cers and no overhead expense of any kind

was to be included in the cost of the program. The maximum amount which the Defense Corporation was required to expend thereunder was not to exceed $846,-429. By the same instrument the Defense Plant Corporation leased the installations, leasehold improvements and machinery to the defendant for a term ending July 1, 1948, with provisions for an extension thereafter and termination upon the happening of certain events. The defendant agreed to pay to the Defense Plant Corporation as rental two-tenths of one percent of its aggregate net sales of all aircraft parts during each year of the lease, with a maximum annual rental of $90,000. The contract also gave to the defendant an option to purchase the installations, leasehold improvements and machinery upon expiration or termination of the lease.

Pursuant to this contract with the Defense Plant Corporation, the defendant on or about July 28, 1943, let to Congrave Shanks and Son, paint contractors in Louisville, Kentucky, a subcontract for painting the buildings which were to house the operations of the defendant in carrying out its contract with the Defense Plant Corporation. On August 4, 1943, the plaintiff, while working as an employee of Congrave Shanks and Son, at the property at 18th and Burnett Streets, came in contact with an unguarded electric wire causing the injuries complained of. At the time of the accident, the plaintiff, Congrave Shanks and Son, his employer, and the defendant had all elected to operate under the provisions of the Kentucky Workmen's Compensation Act, KRS 342.001 et seq. Following the accident, Congrave Shanks and Son, through its insurance carrier, paid to the plaintiff the compensation to which he was entitled under the Compensation Act. On November 12, 1943, the plaintiff filed this action in the State court to recover from the Reynolds Metals Company on its common law liability arising out of alleged failure on its part to furnish the plaintiff a safe place in which to work. The defendant removed the action to this court. The defendant contends that under the provisions of the Workmen's Compensation Act such an action is not maintainable against it.

■ The ruling is controlled by the provisions of Section 342.060 of the Kentucky Revised Statutes, which reads in part as follows:

"A principal contractor, intermediate or subcontractor shall be liable for compensation to any employe injured while in the employ of any one of his intermediate or subcontractors and engaged upon the subject matter of the contract, to the same extent as the immediate employer."

This statute has been before the Kentucky Court of Appeals for construction on several occasions, and its meaning and effect are now well settled. McEvilly v. L. E. Meyers Co., 211 Ky. 31, 276 S.W. 1068; Dillman v. John Diebold & Sons Stone Co., 241 Ky. 631, 44 S.W.2d 581; Jennings v. Vincent's Adm'x, 284 Ky. 614, 145 S.W.2d 537. These cases hold that the employe of a subcontractor has a valid claim for compensation under the Act against both the subcontractor and the principal contractor, which claim is exclusive and bars any common-law right of action against either of the two. Counsel for the parties herein agree upon this construction and meaning of the statute. It is contended by the plaintiff, however, that the defendant, Reynolds Metals Company, is not a "principal contractor" as the term is used in the statute and that the statute accordingly does not operate as a bar to his common law right of action.

■ There appears to be no reported decision in Kentucky involving a contract similar to the one here in question. After a careful consideration of the terms of the contract and the fundamental purpose of the Workmen's Compensation Act, I am of the opinion that the defendant is included within the phrase "principal contractor" as used in Section 342.060 of the Kentucky Revised Statutes. That contract imposed upon it practically the same obligations as would be assumed by any general contractor undertaking the work. By it the Defense Plant Corporation employed the defendant to perform the specified construction work according to plans and specifications. The defendant had the right to employ such other contractors as it deemed advisable to do certain parts of the job. Title to the improvements and the machinery vested in the Defense Plant Corporation. It is true that the defendant received no direct compensation in cash for the performance of this work, but that part of the contract can not be separated from the remainder of the contract which provided the defendant with the necessary equipment and machinery to engage in the

business of manufacturing aircraft parts. Except for such a contract the defendant would have been required to raise and invest more than $800,000 in order to engage in this business. The indirect benefit thus received from undertaking the construction program no doubt fully compensated it for the services performed. It would be most unusual to assume that the defendant, heretofore engaged exclusively in manufacturing operations for commercial purposes was performing the specified construction work called for by the contract without receiving compensation for its services. The contract must necessarily be considered in its entirety, and such a consideration strongly rejects the contention of the plaintiff that the defendant was acting merely as the agent of the Defense Plant Corporation in performing the services referred to. The more practical and logical construction of the entire contract is that the defendant was acting first as a general contractor for carrying out the construction program, and then, secondly, as the lessee of the plant when the construction program had been completed. The fact that the contract is styled "Agreement of Lease" seems immaterial. Regardless of what it was called it was a written contractual instrument. It is well settled law that in the construction of a written contract the instrument must be construed as a whole.

Plaintiff urges upon us the decision of the Supreme Court of Errors of Connecticut in Bogoratt v. Pratt & Whitney Aircraft Co., 114 Conn. 126, 157 A. 860, where somewhat similar facts were involved. However, the decision in that case seemed to turn upon the proper construction to be given of a phrase in the Compensation Act of Connecticut, which phrase does not exist in the Kentucky Act. The Kentucky Court of Appeals has called attention to the fact that by reason of such difference in wording the decisions from other States are not particularly helpful in determining the meaning of the Kentucky Act. Robinson-Pettet Company v. Workmen's Compensation Board, 201 Ky. 719, 258 S.W. 318; Elkhorn Coal Corp. v. Kerr, 203 Ky. 804, 263 S.W. 342. We are more impressed with the defendant's contention that it is the settled policy of Kentucky that the Kentucky Workmen's Compensation Act should receive a liberal construction in order to effectuate the beneficent purpose of the Act which was to substitute for previously existing common law rights the more certain and broader remedies of compensation irrespective of the lack of negligence on the part of the employer. Phil Hollenbach Co. v. Hollenbach, 181 Ky. 262, 204 S.W. 152, 13 A.L.R. 524; Ashland Limestone Co. v. Wright, 219 Ky. 691, 294 S.W. 159. If the plaintiff had proceeded against the defendant herein before the Workmen's Compensation Board I believe the Court would have very little hesitancy, using the liberal construction rule laid down by the Kentucky Court of Appeals, in holding the defendant was a principal contractor and liable for compensation under the Act. Compare: Marks Bros. Co. v. Goossen, 197 Wis. 562, 222 N.W. 818; Priby v. Lee, 191 A. 105, 15 N.J.Misc. 292; Lorenz v. Pilsener Brewing Co., 159 Or. 552, 81 P.2d 104, 109, 110; Home Oil Co. v. Helton, 179 Ark. 132, 14 S.W.2d 549; Sheble v. Turner, 46 Cal.App.2d 762, 117 P.2d 23. If such a construction is to be given to the Act in cases of this kind which may follow, in proceedings before the Workmen's Compensation Board, the same construction would necessarily apply in the present common-law action with the result that such an action does not lie against the defendant.

Accordingly, on the facts as presented to the Court in the pre-trial conference, the Court rules that the plaintiff has no cause of action against the defendant in this proceeding. For the purposes of the record it may be necessary for the parties to stipulate either that the facts as herein above set out are admitted or to set out by stipulation more in detail what the complete facts are, and then submit for entry an appropriate order carrying into effect the foregoing views of the Court.